UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| AUSTIN DAVIS, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 2:14-CV-80 |
| | § | |
| CITY OF PORT ARANSAS, TEXAS, *et al*, | § | |
| | § | |
| | § | |
| Defendants. | | |

## MEMORANDUM OPINION & ORDER

Pending before the Court is Defendants' Motion to Dismiss Based upon Entitlement to Qualified Immunity (D.E. 31), filed by Texas Game Wardens Don Jackson and James Lindsey, Texas Department of Public Safety (DPS) Sergeant Daniel Scott Lorbereau, and DPS Trooper Danny White (collectively "Defendants"), to which Plaintiff Austin Davis has responded (D.E. 33) and Defendants have replied (D.E. 34). For the reasons set forth below, Defendants' motion is **GRANTED** in part and **DENIED** in part.

### I. Factual and Procedural Background

Plaintiff alleges that he was spending Spring Break 2012 with his family in Port Aransas, Texas, when he was stopped by law enforcement while attempting to move his truck on the beach. When Plaintiff saw officers approaching, he grabbed two empty beer cans from inside the truck and threw them under the truck, which Defendant Jackson witnessed. Officers walked Plaintiff over to a police car, where Defendant Lindsey administered an eye test on Plaintiff before calling Defendant White for backup. When White arrived on the scene, Plaintiff told him, "Officer I don't want to go to jail." White

told Plaintiff to "turn around". Plaintiff again stated, "I don't want to go to jail" while holding his hands behind his head. White then shot Plaintiff in the chest with a Taser and continued tasing him for 15 to 20 seconds, after which Lindsey ripped the Taser prongs out of Plaintiff's chest. Plaintiff was then handcuffed and taken to jail. After Plaintiff refused to submit to a breathalyzer test, all four Defendants pinned Plaintiff to a chair, repeatedly hit him in the back of the head with a baton, shoved their knees into his back and legs, called him names, and threatened him with a Taser. They also failed to intervene to stop him from being injured by each other's actions. As a result of Defendants' actions, Plaintiff suffered serious injuries, including Taser burns to his chest and contusions to his extremities and back, and he continues to suffer pain.

Plaintiff filed this lawsuit on March 14, 2014. His Second Amended Original Complaint (D.E. 27) alleges causes of action against Defendants pursuant to the Fourth and Fourteenth Amendments and 42 U.S.C. § 1983 for excessive force.[1] Defendants now move for dismissal based on their entitlement to qualified immunity and Plaintiff's failure to state a claim for which relief can be granted.

## II. Legal Standards

### A. Motion to Dismiss Standard

Federal Rule of Civil Procedure 12(b)(6) provides that a party may move to dismiss an action for "failure to state a claim upon which relief may be granted." FED. R. CIV. P. 12(b)(6). When considering a Rule 12(b)(6) motion, a court must accept the

---

[1]. Plaintiff also brought federal claims against the City of Port Aransas, Texas, based on its alleged failure to train and supervise the officers, and its policies, customs, procedures, or practices that permit or acquiesce in unconstitutional behavior. Plaintiff voluntarily abandoned these claims, and the City of Port Aransas was dismissed from this suit on January 9, 2015. D.E. 44, 47.

plaintiff's allegations as true and draw all reasonable inferences in his favor. *See Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164 (1993); *United States v. Gaubert*, 499 U.S. 315, 327 (1991). A court may not look beyond the face of the pleadings to determine whether relief should be granted based on the alleged facts. *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999) (citing *St. Paul Ins. Co. of Bellaire, Texas v. AFIA Worldwide Ins. Co.*, 937 F.2d 274, 279 (5th Cir. 1991)).

Whether a pleading adequately states a claim under Federal Rule of Civil Procedure 12 is a matter of balancing a party's right to redress against the interests of all parties and the court in minimizing expenditure of time, money, and resources. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 558 (2007). Rule 8's requirement for a short and plain statement showing an entitlement to relief is interpreted as requiring sufficient information for the defendant to understand the claim and formulate its defense. FED. R. CIV. P. 12(e). The *Twombly* court expressly "retired" the old test that Plaintiff's briefing appears to rely on. That test is stated in *Conley v. Gibson*, 355 U.S. 41, 45–46 (1957): that a complaint would not be dismissed "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Twombly*, 550 U.S. at 577 (quoting and rejecting *Conley*). The revised standard for determining whether a complaint states a cognizable claim has been outlined by the United States Supreme Court in *Twombly* and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Furthermore, "Pleadings must

be construed so as to do justice." FED. R. CIV. P. 8(e). The requirement that the pleader "show" that he is entitled to relief requires "more than labels and conclusions[;] a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

Factual allegations are required, sufficient to raise the entitlement to relief above the level of mere speculation. *Twombly*, 550 U.S. at 555. Those factual allegations must then be taken as true, even if doubtful. *Id.* In other words, the pleader must make allegations that take the claim from "conclusory" to "factual" and beyond "possible" to "plausible." *Id.* at 557–58. The *Twombly* court stated, "[W]e do not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. The Court, elaborating on *Twombly*, stated, "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* In dismissing the claim in *Iqbal,* the Court stated, "It is the conclusory nature of respondent's allegations, rather than their extravagantly fanciful nature, that disentitles them to the presumption of truth." *Id*. at 681.

## B. Qualified Immunity Standard

The doctrine of qualified immunity affords governmental officials protection against individual liability for civil damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v.*

4 / 16

*Fitzgerald*, 457 U.S. 800, 818 (1982)). Accordingly, Fifth Circuit courts engage in a two-step process when examining qualified immunity defenses. The first step of the evaluation is whether the plaintiff has alleged a violation of a clearly-established constitutional or statutory right. *See Collins v. Ainsworth*, 382 F.3d 529, 537 (5th Cir. 2004). The next step is to determine the reasonableness of the defendant's alleged behavior. *Id.* Claims arising under Section 1983 must establish that the alleged constitutional deprivation was intentional or due to deliberate indifference and not merely the result of negligence. *See Farmer v. Brennan*, 511 U.S. 825, 828–29 (1994); *Fraire v. City of Arlington*, 957 F.2d 1268, 1276 (5th Cir. 1992).

**C. Fourth Amendment Excessive Force Standard**

The right to be free from excessive force is clearly established. *Poole v. Shreveport*, 691 F.3d 624, 627 (5th Cir. 2012) (citing *Deville v. Marcantel*, 567 F.3d 156, 169 (5th Cir. 2009) (per curiam)). In order to state a claim under Section 1983 for excessive force, a plaintiff must allege facts showing that he suffered "(1) an injury that (2) resulted directly and only from the use of force that was excessive to the need and that (3) the force used was objectively unreasonable." *Peterson v. Fort Worth*, 588 F.3d 838, 846 (5th Cir. 2009) (quoting *Ballard v. Burton*, 444 F.3d 391, 402 (5th Cir. 2006)). When considering reasonableness in the context of excessive force, Fifth Circuit courts "pay 'careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect posed an immediate threat to the safety of the officers or others, and whether he was actively resisting arrest or attempting to

evade arrest by flight.'" *Gutierrez v. City of San Antonio*, 139 F.3d 441, 447 (quoting

*Graham v. Connor*, 490 U.S. 386, 396 (1989)) (internal alterations omitted).

## III. Analysis

Defendants' Motion to Dismiss raises the following objections to Plaintiff's

Second Amended Complaint:

A) Defendant White's use of force with his Taser was not unreasonable;

B) Defendant Lindsey's use of force in removing the Taser leads from
   Plaintiff was not unreasonable and/or clearly established; and

C) Plaintiff's pleadings regarding the beating he allegedly suffered at the
   jail are deficient in that Plaintiff fails to enunciate personal involvement
   of each Defendant or show that any force was unreasonable, and his
   related bystander claim fails because there was no excessive force from
   which Defendants could have protected him.

Each of these arguments will be addressed in turn.

### A. Defendant White's Use of His Taser

Giving rise to his excessive force claim against Defendant White alone, Plaintiff

alleges as follows:

> Defendant Lindsey called Defendant White to the scene and
> when he arrived, Mr. Davis told Defendant White, "Officer I
> don't want to go to jail." Defendant White said "turn around"
> and Mr. Davis said again "I don't want to go to jail" still
> holding his hands behind his head. Defendant White then shot
> Mr. Davis in the chest with a tazer and continued tazing him
> for 15 to 20 seconds. It was completely unreasonable for Mr.
> Davis to be shot with the tazer as he had no way to try to run,
> even if he had wanted to, because he was between the truck
> door and the truck and Defendant Jackson was blocking any
> other exit which he might take to escape. Furthermore, Mr.
> Davis was not in possession of any type of weapon nor was

he threatening anyone with anything at the time he was shot
with the tazer.

2d. Amend. Compl. ¶ 9. Plaintiff further alleges that the force used by White "was not
performed in good faith to maintain or restore discipline, but was performed maliciously,
intentionally, and sadistically for the very purpose of punishing and causing harm to
Plaintiff." *Id.* ¶ 16. As a result of being tased, Plaintiff alleges that he suffered "serious
injuries to his person, including . . . tazer burns to his chest." *Id.* ¶ 13.

These facts, if true, establish a claim that White used force in excess of that
necessary to detain or restrain Plaintiff, and Plaintiff was injured as a result. As such,
Plaintiff's allegations could constitute a constitutional violation. White argues that he is
nonetheless entitled to qualified immunity because the Complaint fails to show that a
similarly-situated officer would have understood that such force was a violation of a
clearly established statutory or constitutional right.

As the Sixth Circuit has observed, cases addressing qualified immunity for
excessive force involving a Taser fall into two groups. *Cockrell v. City of Cincinnati*, 468
F.App'x 491, 495 (6th Cir. 2012). "The first involves plaintiffs tased while actively
resisting arrest by physically struggling with, threatening, or disobeying officers . . .
[T]he second group of cases [involves] a law enforcement official tas[ing] a plaintiff who
has done nothing to resist arrest or is already detained." *Id.* (collecting cases). "In the first
category, where the suspect is resisting arrest or disobeying the officers' orders, tasing
may not be considered excessive force." *Buchanan v. Gulfport Police Dept.*, 2012 WL
1906523, * 9 (S.D. Miss. May 25, 2012) (collecting cases). Courts faced with the second

category "hold that a § 1983 excessive-force claim is available, since 'the right to be free from physical force when one is not resisting the police is a clearly established right.'" *Cockrell*, 468 F.App'x at 496 (quoting *Kijowski v. City of Niles,* 372 F.App'x 595, 601 (6th Cir. 2010)).

White maintains that Plaintiff falls into the first category because Plaintiff admits to being non-compliant prior to his arrest.  White points out that when he asked Plaintiff to turn around, Plaintiff refused the order by stating, "Officer I don't want to go to jail." 2d. Amend. Compl. ¶ 9. Citing *Poole v. City of Shreveport*, White argues that the Fifth Circuit has held that an officer's action in tasing a suspect during a traffic stop was objectively reasonable where the suspect smelled of alcohol, admitted to having consumed alcohol earlier, and refused the officer's verbal commands to turn around in order to be placed under arrest. 691 F.3d 624, 628 (5th Cir. 2012). However, in reaching this decision, the *Poole* court underscored that the officer "responded with 'measured and ascending' actions that corresponded to Poole's escalating verbal and physical resistance" following the officer's repeated commands to turn around, recognizing that the officer first "responded with verbal commands and attempted to grab Poole's arm, before resorting to a taser, which . . . he applied and withdrew very quickly." *Id.* (citing *Galvan v. City of San Antonio*, 435 F.App'x 309, 311 (5th Cir. 2010)). In *Galvan*, the Fifth Circuit similarly found that officers' actions in tasing a suspect were reasonable because the "officers reacted with measured and ascending responses—verbal warnings, pepper spray, hand- and arm-manipulation techniques, and then the use of a Taser." 435 F.App'x at 311.

In contrast, Plaintiff alleges that he was suspected of misdemeanor violations, including driving under the influence, open container, and littering; he did not pose a threat to the safety of the officers or others, as his hands were behind his head; and he did not actively resist arrest or attempt to evade arrest by flight, but merely stated that he did not want to go to jail in response to White's single instruction to turn around. *See Gutierrez*, 139 F.3d at 447. Under this set of facts, no reasonable officer could have concluded that immediately tasing Plaintiff for 15 to 20 seconds without warning or other "measured and ascending" responses was reasonable. *See Nelson v. City of Davis*, 685 F.3d 867, 881 (9th Cir. 2012) (collecting cases establishing that "a failure to fully or immediately comply with an officer's orders neither rises to the level of active resistance nor justifies the application of a non-trivial amount of force"); *Shekleton v. Eichenberger*, 677 F.3d 361, 366–67 (8th Cir. 2012) (finding it was clearly established that tasing "an unarmed suspected misdemeanant, who did not resist arrest, did not threaten the officer, did not attempt to run from him, and did not behave aggressively towards him" was excessive); *Cavanaugh v. Woods Cross City*, 625 F.3d 661, 667 (10th Cir. 2010) (finding it was clearly established that a police officer "could not use his Taser on a nonviolent misdemeanant who did not pose a threat and was not resisting or evading arrest without first giving a warning"); *Brown v. City of Golden Valley*, 574 F.3d 491, 497 (8th Cir. 2009) (clearly established that tasing an individual who "posed at most a minimal safety threat to . . . officers and was not actively resisting arrest or attempting to flee" was unconstitutional); *Harris v. County of King*, 2006 WL 2711769, *3–*4 (W.D. Wash., Sept. 21, 2006) (denying qualified immunity on excessive force claim where discharge of

9 / 16

Taser was unnecessary to protect officers' safety as plaintiff's submissive behavior of holding his hands over his head posed no threat).

Accordingly, Defendant White is not entitled to qualified immunity on Plaintiff's excessive force claim arising from being tased.

### B. Defendant Lindsey's Removal of the Taser Leads

Giving rise to his excessive force claim against Defendant Lindsey alone, Plaintiff alleges as follows:

> After Defendant White shot Mr. Davis with the tazer, Defendant Lindsey came and literally ripped the prongs from the tazer out of Mr. Davis' chest and then he was put in handcuffs. It is unknown as to whether Defendant Lindsey has any medical certifications to know how to remove tazer prongs from Mr. Davis' chest and it is believed by Mr. Davis that he did not because of the manner in which he ripped the prongs from his chest.

2d. Amend. Compl. ¶ 9. Plaintiff repeats his allegation that Lindsey's actions were "not performed in good faith to maintain or restore discipline, but [were] performed maliciously, intentionally, and sadistically for the very purpose of punishing and causing harm to Plaintiff. *Id.* ¶ 16.

Lindsey argues that he is entitled to qualified immunity on this claim because Plaintiff cannot establish that a reasonable officer would have understood that removing Taser leads from a suspect was proscribed by law at the time and under those circumstances. In response, Plaintiff states that he "believes that he has properly plead a claim for excessive force" against Lindsey based upon Lindsey's intentionally ripping the

Taser leads from Plaintiff's chest instead of allowing medical personnel to do so. D.E. 33, p. 4.

Plaintiff does not cite any authority supporting his assertion that Taser leads may only be removed by medical personnel, and more than one court in this circuit has held that the removal of Taser leads does not amount to excessive force where it results in no more than *de minimus* injury. *See Langston v. Rascoe*, 2014 WL 2106499, *3 (N.D. Miss. May 20, 2014) (removal of Taser leads did not constitute excessive force where injury required no more than an application of ointment at the site where the Taser leads were removed); *Hawkins v. Coleman*, 2011 WL 1792266, *5 (W.D. La. May 9, 2014) ("While one may infer from the filings plaintiff is alleging both the tasing incident itself and the removal of the taser barbs were painful incidents, again, he has not shown any injury resulting therefrom which would be sufficient to rise to the level of excessive force."). Moreover, at least one court has found that an officer's removal of Taser leads actually indicated an effort by the officer to minimize injury to the plaintiff. *Poole v. City of Shreveport*, 2011 WL 202116, *4 (W.D. La. Jan. 18, 2011). As such, the Court finds that a reasonable officer under the same circumstances would not have understood that removing the Taser leads from Plaintiff was proscribed by law. The Court further notes that although Plaintiff alleges that he sustained Taser burns to his chest and contusions and abrasions on his extremities and back, he fails to allege that he suffered even *de minimus* injury as a result of Lindsey's removing the Taser leads from his chest.

Accordingly, the Court finds that Defendant Lindsey is entitled to qualified immunity on Plaintiff's excessive force claim arising from the removal of the Taser leads.

### C. All Defendants' Actions at the Jail

Giving rise to his excessive force claim against all Defendants based on their actions at the jail, Plaintiff alleges as follows:

> Once at the jail, one of the Defendants told Mr. Davis to blow into an apparatus and he refused. The Defendants then told Mr. Davis he was lucky because it was a no refusal weekend and Mr. Davis requested to see the warrant signed by the judge that made it a no refusal weekend. Defendants refused to do so.
>
> Defendants Lorberau, Jackson, Lindsey, and White then threw Mr. Davis into a chair and held him down. All Defendants were present and were attempting to pin Mr. Davis to the chair, hitting him in the back of the head with a baton and shoving their knees into Mr. Davis' back and his legs. Mr. Davis is not sure which of the Defendants actually hit him on the back of the head but not one of the Defendants intervened to prevent any other from doing so. While Defendants were striking Mr. Davis they continually called him all sorts of names . . . and told Mr. Davis they were going to ruin his firefighter career. . . . Defendant Lorberau not only held the tazer gun to Mr. Davis' neck, he would then take and pop the tazer next to Mr. Davis' face in an effort to scare Mr. Davis. . . . Eventually, after at least an hour of being tortured, Defendants picked Mr. Davis up and walked him to a cell with the tazer pressed against the back of his neck. The Defendants then threw Mr. Davis in with a lot of other inmates which started yelling that they were going to beat his "ass." Mr. Davis pled with Defendants not to put him in that particular cell as he was afraid for his life. Defendants . . . threw him in the cell anyway.

2d. Amend. Compl. ¶¶ 10–11. Plaintiff further alleges that Defendants' use of force "was not performed in good faith to maintain or restore discipline, but was performed maliciously, intentionally, and sadistically for the very purpose of punishing and causing harm to Plaintiff. *Id.* ¶ 16. As a result of these actions, Plaintiff alleges that he suffered

"serious injuries to his person, including . . . contusions to his extremities and his back." *Id.* ¶ 13.

Plaintiff's allegation that he was threatened and verbally abused by Defendants states no claim under Section 1983. *See Cloud v. Welch*, 2011 WL 865020, *3 (S.D. Tex. Mar. 3, 2011) (collecting cases). However, the facts Plaintiff alleges regarding the beating he suffered by all four Defendants while at the jail, if true, establish a claim that Defendants used force in excess of that necessary to detain or restrain Plaintiff, and Plaintiff was injured as a result. As such, these allegations could constitute a constitutional violation.

### 1. Qualified Immunity

Defendants argue that they are nonetheless entitled to qualified immunity for their alleged actions towards Plaintiff at the jail because clearly established law does not prevent officers from using necessary reasonable force to gain compliance of an arrestee who has refused to provide a breath specimen for testing. Citing Page 4 of the Complaint, Defendants explain that they sought a compulsory blood specimen from Plaintiff after he refused to comply with their request for a breath specimen, and Plaintiff fails to allege that an officer in the same context would have understood not to use force to gain compliance because it would violate a clearly established right.

Defendants appear to refer to the portion of the Complaint wherein Plaintiff alleges that Defendants told him it was a "no refusal weekend" after he refused to submit to a breathalyzer but would not show him "the warrant signed by the judge that made it a no refusal weekend." 2d. Amend. Compl. ¶ 13. In Texas, persons who refuse to give a

breath specimen may be brought before a judge and, if appropriate, a warrant may be signed to require a blood draw. *Bacon v. State*, No. 05-12-00964-CR,  2014 WL 357373, *6 n.2 (Tex. App.—Dallas Jan. 31, 2014, pet. ref'd) (mem. op., not designated for publication). Some counties have adopted programs to streamline this process on holiday weekends, nicknamed "no refusal weekends," whereby magistrate judges are on stand-by to sign such warrants. *Gore v. State*, No. 01-13-00608-CR, 2014 WL 5896311, *3 n.2 (Tex. App.—Houston [1st Dist.] Nov. 13, 2014, pet. filed). Plaintiff does not allege that Defendants obtained a warrant to draw his blood or that he consented to any blood draw; in fact, the phrase "blood draw" does not appear anywhere in the Complaint. Instead, Plaintiff alleges that Defendants beat him as punishment, not to gain compliance.

Relying only on the Complaint, which the Court must do in the context of a motion under Rule 12(b)(6), the Court finds that no reasonable officer could have concluded that it was reasonable to pin Plaintiff to a chair and repeatedly hit him in the head with a baton and shove their knees into his back and legs as punishment for refusing to submit to a breathalyzer.

### 2. Failure to Differentiate

Defendants further argue that they are entitled to qualified immunity for these alleged actions because Plaintiff lumps all of them together without enunciating each Defendant's personal involvement, and he has not distinguished which Defendant engaged in which specific acts. As such, the allegations are insufficient to defeat the qualified immunity of any Defendant. In response, Plaintiff argues that the separate acts of the individual Defendants cannot be distinguished without discovery and that lumping

the Defendants together is consistent with *Hale v. Townley*, 45 F.3d 914, 919 (5th Cir. 1995), a Section 1983 case that held that when one officer is aware of another officer's use of excessive force and fails to take reasonable measures to stop the unconstitutional action, he may be liable for that use of force.

The Court finds that the Complaint provides sufficient notice of claims arising from an alleged beating in which all of the individual Defendants were said to have participated. It is not necessary, for pleading purposes, to determine which officer delivered which blows to Plaintiff. These are matters that can be developed in discovery. As alleged, this is not a case where some Defendants were participants in a physical altercation and some were not.

### 3. Failure to Intervene

Finally, Defendants argue that Plaintiff's bystander claim fails because there was no excessive force from which Defendants could have protected Plaintiff. As set forth above, the Court finds that Plaintiff has stated a claim for excessive force against Defendants based on his allegation that they pinned him to a chair and repeatedly hit him in the head with a baton and shoved their knees into his back and legs as punishment for refusing to submit to a breathalyzer.

Accordingly, the Court finds that Defendants are not entitled to qualified immunity on Plaintiffs' excessive force and bystander claims arising from the beating he allegedly suffered while at the jail.

**IV. CONCLUSION**

For the reasons set forth above, it is hereby **ORDERED** that Defendants' Motion to Dismiss Based upon Entitlement to Qualified Immunity (D.E. 31) is **GRANTED IN PART** and **DENIED IN PART** as follows:

1)  Defendant White's motion to dismiss Plaintiff's excessive force claim arising from being tased is **DENIED**;

2)  Defendant Lindsey's motion to dismiss Plaintiff's excessive force claim arising from the removal of the Taser leads is **GRANTED**; and

3)  All four Defendants' motions to dismiss Plaintiff's excessive force and bystander claims arising from the beating he allegedly suffered while at the jail are **DENIED**.

ORDERED this 23rd day of February, 2015.

NELVA GONZALES RAMOS
UNITED STATES DISTRICT JUDGE